UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BROWNE,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>Defendant. | No. 2:24-cv-02359-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendant Wells Fargo Bank, National Association's ("Wells Fargo") Motion to Compel Arbitration, or in the alternative, Motion to Dismiss. (ECF No. 9.) Plaintiff Christopher Browne ("Plaintiff") filed an opposition.[1] (ECF No. 18.) Defendant filed a reply. (ECF No. 19.) For the reasons set forth below, the Motion to Compel Arbitration is GRANTED and the Motion to Dismiss is DENIED as moot.

---

[1] Plaintiff also filed two notices of supplemental authority. (ECF Nos. 20, 21.) The Court reviewed both in making its determination.

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The instant putative class action arises from an alleged fraudulent scheme where unauthorized funds were transferred out of Plaintiff's account at Wells Fargo. Plaintiff alleges on June 20, 2024, he received a text message regarding a fraudulent charge to one of his accounts. (ECF No. 1 ¶ 11.) Plaintiff responded to the text message stating he did not authorize the charge and then called Wells Fargo to report the fraudulent activity. (*Id.* ¶¶ 12–14.) Plaintiff asserts Wells Fargo refused to stop the transaction and ultimately over $13,000 was transferred out of Plaintiff's accounts. (*Id.* ¶¶ 17–20.) On August 29, 2024, Plaintiff filed a Complaint alleging violations of: (1) the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq.; (2) the California Commercial Code §§ 11201, et seq.; and (3) the California Business and Professional Code §§ 17200, et seq. (*See generally id.*) On November 8, 2024, Wells Fargo filed the instant motion to compel arbitration, or in the alternative, motion to dismiss. (ECF No. 9.)

II. **STANDARD OF LAW**

"[T]he federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). There is "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "However, these gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis in original) (internal quotation marks and

2

citations omitted). In either circumstance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

### III.  ANALYSIS

Wells Fargo seeks to compel all of Plaintiff's claims to arbitration based on the arbitration provision ("Arbitration Agreement") contained in the Deposit Account Agreement which governs Plaintiff's accounts. (ECF No. 9-1 at 10; ECF No. 9-5 at 36.) In opposition, Plaintiff does not dispute that he agreed the Deposit Account Agreement would govern his accounts.[2] Instead, Plaintiff argues the Arbitration Agreement is unenforceable due to the inclusion of a public injunctive relief waiver in violation of California law. (ECF No. 18 at 13–18.) According to Plaintiff, this Court can and should decide the enforceability of the Arbitration Agreement. (*Id.* at 11–13.) Wells Fargo disagrees and contends the Arbitration Agreement unambiguously delegates the question of enforceability to the arbitrator — not the Court. (ECF No. 19 at 2.)

The Ninth Circuit has held "language 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy."). When the parties have "clearly and unmistakably" delegated such gateway issues to the arbitrator, the validity of the arbitration agreement is a question for the arbitrator to decide, rather than the court. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Accordingly, the Court begins by

---

[2]  Plaintiff also does not dispute the Deposit Account Agreement attached as Exhibit C to Wells Fargo's motion constitutes the relevant agreement. (*See generally* ECF No. 18.)

examining whether the delegation clause "clearly and unmistakably" delegated the question of enforceability to the arbitrator.

### A. The Delegation Clause

Plaintiff argues the Arbitration Agreement does not clearly and unmistakably delegate the question of enforceability to the arbitrator because the delegation clause "leaves open the possibility that a court may decide questions of enforcement[.]" (ECF No. 18 at 13.) Plaintiff compares the instant action to a Northern District of California case, which found the parties had not clearly delegated the question of enforceability to the arbitrator when other portions of the arbitration agreement were in conflict. (*Id.* at 12 (citing *In re Tesla Advanced Driver Assistance Systems Litig.*, No. 22-cv-05240, 2023 WL 6391477, at *6 (N.D. Cal. Sept. 30, 2023) ("*In re Tesla*"). Here, Plaintiff argues the delegation clause is ambiguous for two reasons. First, Plaintiff notes that while the Arbitration Agreement delegates to the arbitrator "any unresolved disagreement between Wells Fargo and [Plaintiff]," the next sentence states this "may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement." (*Id.* at 12–13 (quoting ECF No. 9-5 at 36).) According to Plaintiff, this language means "a dispute for the arbitrator also may not include enforceability questions." (*Id.* at 13 (emphasis in original).) Second, Plaintiff notes the Arbitration Agreement elsewhere states the following under the legal dispute location ("Venue Provision"):

> Any lawsuit, claim or other proceeding arising from or relating to your account of this Agreement, will take place exclusively in the state or federal courts in the state whose laws govern your account . . . . This includes enforcement of the Arbitration Agreement and entry of judgment on any arbitration award.

(*Id.* (citing ECF No. 9-5 at 39).) According to Plaintiff, this further shows the delegation clause "leaves open the possibility that a court may decide questions of enforcement[.]" (*Id.*)

In reply, Wells Fargo contends Plaintiff's reading of the Arbitration Agreement is "strained." (ECF No. 19 at 2.) According to Wells Fargo, the "manufactured" conflict Plaintiff seeks to create between the delegation provision and the Venue Provision has been rejected by the Ninth Circuit. (*Id.* at 2–3 (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).) Moreover, Wells Fargo argues Plaintiff's citation to *In re Tesla* is misplaced.

4

1    The Court agrees with Wells Fargo.  First, as to Plaintiff's first argument regarding
2 ambiguity, the Court agrees that when read in isolation, the sentence "[a] dispute may also
3 include a disagreement about this Arbitration Agreement's meaning, application, or enforcement"
4 could create ambiguity about what issues are delegated to the arbitrator because this sentence by
5 itself would appear to imply that such disputes may also *not* be delegated to an arbitrator.  (ECF
6 No. 9-5 at 36.)  However, when read after the sentence immediately prior, the Court finds no such
7 ambiguity exists.  The sentence immediately prior states "[a] dispute is any unresolved
8 disagreement between Wells Fargo and you."  (*Id.*)  The word "any" does not leave open the
9 possibility that disputes about the "Arbitration Agreement's meaning, application, or
10 enforcement" might *not* be delegated to the arbitrator.  Moreover, as Wells Fargo notes, when
11 read in connection with the later sentence which reads "[i]f this Arbitration Agreement is in
12 dispute, the arbitrator will decide whether it is enforceable," it is clear and unmistakable that the
13 parties delegated arbitrability to the arbitrator.  (*See* ECF No. 19 at 1 (citing ECF No. 9-5 at 36).)
14    Second, as to Plaintiff's argument about the purported conflict in the Venue Provision, the
15 Court is unpersuaded.  In *Mohamed*, the Ninth Circuit found a similar venue provision posed no
16 conflict because "[n]o matter how broad the arbitration clause, it may be necessary to file an
17 action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an
18 arbitration award, and the parties may need to invoke the jurisdiction of the court to obtain other
19 remedies."  *Mohamed*, 848 F.3d at 1209 (quoting *Dream Theater, Inc. v. Dream Theater*, 124
20 Cal. App. 4th, 547 (2004).)  Here, the Court finds the Venue Provision operates to do just that —
21 to identify the venue, or the legal dispute location, where the parties, for example, can enforce the
22 Arbitration Agreement or obtain entry of judgment on any arbitration award.  *See id.*  The
23 provision does not, as Plaintiff contends, leave the agreement's delegation clause ambiguous.
24    Third, the Court finds Plaintiff's citation to *In re Tesla* unavailing.  The arbitration clause
25 in *In re Tesla* included the following sentence: "[i]f a court or arbitrator decides that any part of
26 this agreement to arbitrate cannot be enforced as to a particular claim or relief or remedy, then
27 that claim or remedy . . . must be brought in court[.]"  2023 WL 6391477, at *2.  The *In re Tesla*
28 court found this language suggested that a court could decide issues related to the arbitrability of

5

1    the agreement. *Id.* Here, unlike *In re Tesla*, there is no such sentence that leaves open the
2    question of arbitrability.

3          In sum, the Court finds the delegation clause clearly and unmistakably delegated
4    arbitrability — whether the agreement creates a duty for the parties to arbitrate a particular
5    grievance — to the arbitrator. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.
6    643, 649 (1986); *see also Wilson v. Wells Fargo & Co.*, No. 20-CV-2307-DMS-WVG, 2021 WL
7    1853587, at *3 (S.D. Cal. May 10, 2021) (similarly finding the venue provision did not conflict
8    with the arbitration clause).

9          Given this, the Court does not consider Plaintiff's arguments regarding enforceability of
10   the Arbitration Agreement. (ECF No. 18 at 13–18 (arguing the Arbitration Agreement (1)
11   violates California Supreme Court's opinion in *McGill v. Citibank*, 2 Cal. 5th 945 (2017), (2) the
12   offending provision cannot be severed, and (3) the Arbitration Agreement contains a poison pill
13   rendering the entire agreement invalid).) These arguments relate to questions this Court cannot
14   and should not answer under these circumstances. *See, e.g.*, *Marselian v. Wells Fargo & Co.*, 514
15   F. Supp. 3d 1166, 1177 (N.D. Cal. 2021) ("Because the arbitrability of this dispute is itself a
16   question for an arbitrator, it is neither necessary nor appropriate for the Court to consider the
17   parties' positions regarding the scope and validity of the arbitration agreement."); *Revitch v. Uber*
18   *Techs., Inc.*, No. 18-CV-2974-PSG-GJS, 2018 WL 6340755, at *5 (C.D. Cal. Sept. 5, 2018)
19   ("Courts have also found, post-*McGill*, that where there is a delegation clause, as there is here, the
20   public injunctive relief question is reserved to the arbitrator." (internal citations omitted)).

21         Accordingly, the Court leaves it to the arbitrator to decide whether the arbitration in fact
22   waives Plaintiff's right to seek public injunctive relief, and if so, what impact this has on the
23   enforceability of the arbitration agreement as a whole.

24         B.    <u>Stay</u>

25         Wells Fargo also requests the instant matter be stayed pending the arbitration proceedings.
26   (ECF No. 9-1 at 17–18.) The FAA requires that "on application of one of the parties" the Court
27   must stay the action. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 479 (2024) (finding "when a
28   district court finds that a lawsuit involves an arbitrable dispute and a party requests a stay pending

arbitration, the court lacks discretion to dismiss the case"). Accordingly, the Court GRANTS Wells Fargo's request and stays the instant action pending the arbitration proceedings. Because the Court finds the motion to compel is warranted, the Court does not address the parties' alternative arguments regarding the motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's Motion to Compel Arbitration (ECF No. 9) and stays this action for the duration of the arbitration proceedings pursuant to 9 U.S.C. § 3. Wells Fargo's Motion to Dismiss is DENIED as moot. The parties are directed to file a joint status report within thirty (30) days after a final arbitration order is issued indicating how the parties intend to proceed.

IT IS SO ORDERED.

Date: August 8, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE